GAW, et ux. *v.* CITY OF HOLLY SPRINGS

No. 40095 June 11, 1956 87 So. 2d 909

May 7, 1956 87 So. 2d 252

508

May 28, 1956 87 So. 2d 565

*Robert B. Smith,* Ripley, for appellants.

*Fant & Bush,* Holly Springs, for appellee.

McGehee, C. J.

This suit involves the question of whether or not a fence erected by the appellants is across a certain public

alley or street in the City of Holly Springs, or is on their private property. An injunction was obtained by the City against the appellants Matthew Gaw and wife to restrain them from maintaining the fence allegedly erected across a public alley or street, and enjoining them from further obstructing the same under their claim of ownership to the area contained therein as a part of Lots 1, 2, 3 and 4 of what is known as the Frazier Subdivision of an area sometimes referred to as Lot 15 and also Block 15 of Section 5, Township 4, Range 2 west in Marshall County, Mississippi.

The southern one-third of the Frazier Subdivision of lot or block 15, consisting of eleven lots, is bounded on the east by a well established and improved thoroughfare known as Compress Street, on the north by one known as College Street, on the west by one known as Chesterman Street, and on the south by one known as Van Dorm Avenue, and is a rectangular area with Lots 1, 2, 3, 4 and 5, numbered from south to north from Van Dorm Avenue, running east and west, and comprising the eastern portion of the said rectangular area known as Lot or Block 15 of the Frazier Subdivision of the City of Holly Springs.

The other lots in the said rectangular area are Lots 20, 21, 22, 23, 24 and 25, numbered from east to west, but running north and south, between Van Dorm Avenue and College Street, the said Lot 25 being bounded on the west by Chesterman Street.

On September 2, 1946, the appellants Matthew Gaw and wife purchased Lots 1, 2, 3 and 4 of the said Frazier Subdivision from C. P. Ayers, Jr., and wife, who had purchased the same on December 15, 1945, from one M. C. Simpson together with Lots 20 and 21. Said grantors C. P. Ayers, Jr., and wife, reside on the south end of Lots 20 and 21, which they retained when selling to the appellants Matthew Gaw and wife said Lots 1, 2, 3 and 4 to the east thereof. The alleged alley or street in

question, 40.6 feet in width, is shown on certain maps introduced by the appellee City of Holly Springs, to run north and south between Lots 1, 2, 3, 4 and 5 to the east thereof and Lot 20 to the west thereof. The residence owned and occupied by the appellants Matthew Gaw and wife is located somewhere on Lots 1, 2, 3 and 4, and the residence of C. P. Ayers, Jr., and wife is located on the south end of said Lot 20 as aforesaid, and the residence of John Dabney Brown, newly constructed, is located on the north end of the said Lot 20, facing College Street, and the eastern property line of the said John Dabney Brown is claimed to be the western boundary of the alleged alley or street in question. The said John Dabney Brown is the son of Clinard Brown, who has been the City Street Commissioner for many years, and he is the only witness who testified in the case who claims that the alleged alley or street has been worked and maintained by the City all the way through from College Street south to Van Dorm Avenue, and he concedes that Van Dorm Avenue, which was curbed and guttered and improved in 1920 has a concrete curb at least 7 inches high across the south end of the alleged alley or street in question, and that there is no opening in the said curb for a turn-out from Van Dorm Avenue into the alleged alley or street. The weight of the evidence is to the effect that only the north end of the alleged alley or street has been used for travel by vehicles, and merely as a means of ingress and egress from College Street on the north down to the residences of the appellants Matthew Gaw and wife on the east and to the residence of C. P. Ayers, Jr., and wife on the west, that is to say, the passageway for travel forks at or near these residences and one driveway goes to the east to the residence of the appellants and the other to the west to the residence of C. P. Ayers, Jr., and wife. From the point where this passageway forks at or near these two residences, and on south to Van Dorm Avenue is not now used for public travel.

Moreover, the north end of the alleged alley or street has only been used for the purpose of picking up garbage at the Gaw and Ayers residences, for delivering coal to these residences, in traveling from College Street southward thereto, and for the use of their friends and acquaintances in travelling to their houses from College Street. The proof further discloses that the said north end of the alleged alley or street was used in moving the occupants to and from the two residences hereinbefore mentioned in travelling south from College Street.

During the trial of this cause, there were three maps of the City of Holly Springs introduced by the appellee, as complainant in the trial court. The oldest of these maps is referred to as the Walthall Map, drawn by James B. Walthall on June 19, 1888. The supposed scale of this map is by poles of 16.5 feet each. This map has been in the chancery clerk's office for many years, and is the first map of the City of Holly Springs containing the Frazier Subdivision of Lot or Block 15. According to a comparison of measurements of the dimensions of some lots elsewhere in the City, it was admitted even by the mayor, city clerk and a surveyor, all as witnesses for the City, that the length of Lots 1, 2, 3 and 4 running east and west would be approximately 200 feet on the Walthall Map, although the bill of complaint alleged that these lots were only 140 feet in length running east and west.

The next map introduced by the City of Holly Springs was one known as the Anderson Map, which was a large cloth or paper map of the City of Holly Springs which had hung on the wall in the City Clerk's office for many years, and was a very old, though undated, map. The drawer of this map was W. W. Anderson, an engineer or architect. On this map the dimensions of the lots in the Frazier Subdivision were not given, so far as being written on each lot is concerned, but the map carried the following legend in large letters under the word "Explana-

tion" "Scale 1 Inch to 100 Feet". J. T. Wade, who has been clerk of the City of Holly Springs since May 1941 and had served as chancery clerk for a period of 8 years prior thereto, testified that this map had been hanging on the wall in his office for many years, was there when he took office, and that it was the map that was used for ascertaining the size of lots in the City of Holly Springs. He testified that on September 2, 1946, when the appellants Matthew Gaw and wife purchased Lots 1, 2, 3 and 4 of Block 15 of the Frazier Subdivision this map was on the wall in his office, and was accepted as being a correct map of the City. He was asked to take a scale or ruler and measure the distance east and west across these lots counting 1 inch to equal 100 feet, and he testified that these lots would be according to that scale more than 200 feet east and west.

There was nothing on this map to indicate that the "Explanation" of the map being drawn to a scale of 1 inch to 100 feet had been placed on this map by anyone other than the person who originally drew the map. It clearly appears on its face to be a part of the Anderson map and that the map and the explanation were produced as one act when the map was drawn. This notation of "Scale 1 Inch to 100 Feet" was the only means by which any proposed purchaser of any lots could form an opinion as to their approximate dimensions so far as an examination of the map is concerned. Moreover, the City of Holly Springs introduced the map as a part of its case, and under the rules of evidence the City is bound by what is contained on the map when the same is introduced for the purpose of showing a dedication of the alleged alley or street and where the same was intended to be located when Lot or Block 15 of the Frazier Subdivision was subdivided. The testimony given by these City witnesses on cross-examination was objected to by the City on the ground that it had not been proved that the map had been drawn to scale, but we are of the opinion that such fact

is presumed from the further fact that the City Clerk, J. T. Wade, a witness for the City, testified that this Anderson map had been hanging on the wall in his office since 1941, and had been used as long as he could remember in determining the size of the lots shown on such map. Since the size of these lots was not shown thereon, there was no way for this map to be used in determining the size of lots except by reference to the notation which indicated that the map had been drawn to a scale of 1 inch to 100 feet.

The third map introduced by the City, known as the Shaw map, drawn on February 26, 1939, but which was not filed until October 7, 1947, subsequent to the time that the appellants purchased the four lots in question, shows for the first time that these lots were only 140 feet in length running east and west, beginning at the west boundary of the well-established and improved Compress Street on the east of said lots. There is no explanation in the record as to why the Shaw map was drawn so as to show these lots to be only 140 feet in length, east and west, as compared with approximately 200 feet on the older Walthall and Anderson maps, other than the fact that this unimproved alleyway from College Street south as far as the Gaw and Ayers residences was located 140 feet west of Compress Street, as it actually appeared on the ground. The Walthall and Anderson maps disclose that there was to be an alley or street running north and south from College Street to Van Dorm Avenue, somewhere between Compress Street and Chesterman Street, and if the City is to rely upon a dedication it had the burden of proving by a preponderance of the evidence that when Lot 15 or Block 15 of the Frazier Subdivision was subdivided the alleged alley or street in question was located by the plat thereon 140 feet west of Compress Street instead of approximately 200 feet.

The City proved that the rectangular area hereinbe-
fore mentioned, running east and west, is only 688.5 feet
between the centers of Compress and Chesterman Streets,
whereas the Walthall and Anderson maps would indi-
cate that this distance is approximately 750 feet. This
would account for the shortage in the length of the lots
of the appellants, east and west. All of the maps dis-
close that the alleged alley or street in question as shown
north-of College Street is an extension of what purports
on the maps to be. an alley or street running north be-
tween Van Dorm Avenue and College Street; and that
there are parts of an old hedgerow both north and south
of College Street, approximately in line with what pur-
ports to be the western boundary of the alley or street
in question as actually located on the ground. Moreover,
there is a concrete sidewalk at the north side of Van
Dorm Avenue, running ·east and· west, and along this
sidewalk there are lines in the concrete approximately
30 feet in length running east and west which the sur-
veyor testified were the regular lines or markings for
a crossing of the sidewalk to prevent horses from slipping
when crossing the same. These markings were evidently
placed on the sidewalk at the south end of the alleged
alley or street prior to the time that the 7-inch curb was
placed across the said. alley or street. The surveyor fur-
ther testified that when he made his survey of the actual
location of the lots and the driveway as the same existed
on the ground shortly prior to the trial of this case, he
observed. in the southern portion of the alley or street
that at one time there had been an old.road about the ap-
proximate width of vehicles, and that this road extended
from Van Dorm Avenue northward. This would indicate
that prior to 1920 this alley or street had been used by
the traveling public for the entire distance between Van
Dorm Avenue and College Street, since .there is no dis-
pute but that the same had been used for the purposes

hereinbefore mentioned for the distance between the Gaw and Ayer residences and north to College Street.

The proof clearly shows that there was a fence and gate across this "travelway" up until about 13 to 15 years ago, but that thereafter it remained open and was used for the purposes aforesaid down to these two residences until the appellants placed a fence across the same as an extension westward of the north line of their lot 4 according to the Shaw map filed after they purchased the four lots. The precise question is whether the "travelway" from College Street down to these houses has been a private way for ingress and egress from College Street to these houses or has been used as a public thoroughfare during the past 13 to 15 years, its use prior to that time having been by access through a gap or gate at the north end thereof.

The city clerk, chancery clerk, and other officials who would be supposed to known whether or not there was ever a formal dedication of the Frazier Subdivision by any separate plat thereof filed with the chancery clerk, testified that they have never seen such a map or plat in any platbook in the chancery clerk's office or any map or plat in the city clerk's office. Nevertheless, the City could have acquired such an alley or street as now claimed to actually exist on the ground if the proof is sufficient to show such acquisition by adverse user for the time required by law. Lots in the said subdivision in most instances have been conveyed by numbers without any dimensions given, but by reference to the older maps of the entire City of Holly Springs on file at the time the appellants acquired their lots, such lots are approximately 200 feet in length running west from Compress Street, instead of 140 feet as shown by the Shaw map, which seems to have disregarded the scale of measurements on the two former maps and fixed the lots of the defendants at 140 feet in length, because of the location of this old "travelway" 140 feet west of Compress Street.

■■■ Aside from the question of whether or not this travelway is actually located on the ground at the place where it would have been according to the measurements on the Walthall and Anderson maps, and aside from the fact of whether or not there was ever any separate map or plat filed to evidence the dedication of the Frazier Subdivision, we are of the opinion that the city has acquired an easement for public travel from College Street south not only for the length of the route actually used for garbage collection, delivery of coal, moving of the successive occupants into and from the residences now occupied by the Gaws and Ayers and for ingress and egress of their friends and acquaintances, and by doing some work in filling up holes along the route, because under the express ruling of this Court in the case of Shoemaker v. Coleman, 94 Miss. 619, 47 So. 649, it is immaterial that the city did not open up the alley or street and continue to maintain the same for its entire length from College Street to Van Dorm Avenue. The Court held in that case that the maintaining of an avenue or street in its full length was not required "until the advancing interest of the city required them to be so opened up." And in the case of Skrmetta v. Moore, et al, 202 Miss. 585, 30 So. 2d 53, the Court held that a partial acceptance and improvement of a street dedicated to public use in a plat or survey is complete acceptance of the entire street and authorizes improvement by public authorities of the remainder of the street when the public interest requires.

In the instant case it was not contended that the City failed to work and maintain for the use of the traveling public that part of this alley or street running north from College Street. In the Skrmetta case, supra, the Court said: "There is no evidence of any formal acceptance by the public authorities of the dedication of Oak Street, but if an acceptance was necessary in such a case as this, the evidence is ample that that part of Oak Street north

of East Beach Street has been actually accepted and improved as a city street for a width of 60 feet and for a time long back into the past, and this was sufficient to extend the acceptance to the Gulf and to authorize its actual improvement by the public authorities as a street for the same width from East Beach Street to the Gulf where the public interest required it to be done. See for instance 26 C. J. S., Dedication, Sec. 41, p. 112, and Shoemaker v. Coleman, 94 Miss. 619, 625, 47 So. 649.''

There it appeared that nothing had been done to Oak Street from East Beach Street, running east and west, on down to the Gulf, and that the City of Biloxi had only used and maintained that part of Oak Street north of East Beach Street.

The failure to introduce the original or an authenticated copy of a separate map or plat of the dedication of the Frazier Subdivision, is fully accounted for, since the same is unavailable. Nevertheless that subdivision is incorporated into the Walthall and Anderson maps of the entire City of Holly Springs, and it clearly appears that an alley or street was intended to be dedicated, as shown on those maps, between the lots of the appellants to the east and Lot 20 to the west, and that the travelway in question, if constituting an alley or street, is an extension southward of the alley or street being used and maintained north of College Street. We therefore hold that the decree of the chancellor in requiring the appellants to remove their fence and restraining them from further obstructing the alley or street in question should be affirmed, and that under all the facts and circumstances hereinbefore mentioned the City of Holly Springs is the owner of an easement for public travel of the said alley or street all the way from College Street to Van Dorm Avenue of the dimension shown on the Shaw map and Cooper Survey between parallel lines along the traveled route from College Street to where the same forks near the Gaw and Ayer residences, and thence on south to Van

Dorm Avenue, the south portion thereof to be opened and improved at such time as the public interest, in the judgment of the City authorities, may require.

Affirmed.

All justices concur except *Holmes, J.,* who took no part.

## ON MOTION OF APPELLEE TO STRIKE STENOGRAPHER'S TRANSCRIPT OF THE EVIDENCE, AND ON MOTION OF APPELLANTS FOR DIMINUTION OF RECORD

One of the grounds stated by the appellee, City of Holly Springs, as to why the transcript of the evidence filed in this court should be stricken, is that the transcript is incorrect in the following particulars: "(a) No copy of the map introduced by witness Hurdle is made a part of the transcript; (b) no copy of the plat of the witness R. L. Cooper is made a part of the transcript; (c) no copy of the drawing made by the witness R. L. Cooper is made a part of the transcript; (d) No copy of the map introduced by witness Wade is made a part of the transcript; (e) no copy of the second map introduced by witness Wade is made a part of the transcript; (f) no copy of the third map introduced by witness Wade is made a part of the transcript; (g) * * *; (h) * * *; (i) * * *."

 The absence from the record of the above mentioned maps is due to the fact that they were introduced by the appellee with permission to withdraw the originals and substitute copies therefor, and the copies were never supplied. It is ordinarily the duty of an appellant to take such steps as are available for having an incomplete record made complete on appeal. However, the appellee is not in position to invoke this rule in the instant case since these maps were introduced by the appellee and were thereupon withdrawn with permission to substitute copies thereof, and it then failed to do so.

Section 1637, Code of 1942, provides, among other things, that: ''It shall be the duty of the court reporter to deliver to the clerk of the court in which any suit may be tried, at the conclusion of the trial, all depositions, exhibits, maps or other item of evidence, or matter of proceeding, introduced in evidence during the progress of the trial, * * *.'' But in the instant case the court reporter could not deliver these maps to the clerk since the originals were withdrawn when introduced, and the appellee failed to substitute copies thereof as. stipulated and agreed. The record shows that one of counsel for appellee, after having obtained permission to withdraw the original maps and substitute copies thereof, made the following statement: ''I wonder if we might stipulate that in substituting copies, we don't have to substitute the entire large map?'' To which the counsel for the appellants replied: ''Oh, yes. Just the pertinent space, with the identifying data, etc. on it. Yes, sir, that's all right.''

After this appeal was taken the appellants filed a motion in the Chancery Court for an order to require the clerk of said court to send up to this Court the three maps of the City of Holly Springs, as introduced in evidence by the said appellee and identified as the Walthall map, the Anderson map, and the Shaw map. The appellee contested this motion on several grounds, among which were (a) that the jurisdiction of the cause was then vested exclusively in the Supreme Court of Mississippi; (b) no grounds are shown in the motion for forwarding the original exhibits rather than copies thereof; (c) that it is not permitted to forward original exhibits in lieu of copies of maps on file in the county courthouse or city hall; (d) that the maps are so old and fragile that it is not practicable to send them to Jackson; (e) that all information that could be derived from the original exhibits could also be derived from copies; and (f) that

the motion was filed after the time for perfecting the record for appeal had expired.

There was a hearing before the Chancellor on this motion, at the conclusion of which the court rendered a written opinion reciting in detail that the appellee had introduced these maps and had been permitted to withdraw the same and substitute copies thereof, and in which written opinion the court stated that "these maps are an important part of the evidence * * * I think that when they (meaning the City of Holly Springs) asked to substitute copies for the original they should have provided the copies. * * I will have to overrule the motion as much as the court dislikes to do so, because this Court does want the Supreme Court to have the complete record before it." The motion was overruled by the chancellor on the sole ground that he had lost jurisdiction of the case by virtue of the pending appeal in this court.

Thereafter the appellants filed a motion in the Supreme Court for diminution of the record in order to perfect the same. This motion recited the introduction of the three maps by the appellee, under the foregoing circumstances, and then averred that the copies were never prepared or filed by the appellee in order that they could be inserted in the record. The appellants in their said motion have prayed for a writ of certiorari to require the chancery clerk to certify to this Court the original maps as introduced on the trial, or in lieu thereof duly authenticated copies of the same. The appellee has filed a reply to the said motion and is resisting the granting of the relief prayed for therein by the appellants.

■■ We are not justified in directing the chancery clerk to send up the originals of what are alleged to be the official maps of the City of Holly Springs on file in the chancery clerk's office and at the city hall. If the maps are the recognized official maps of the City of Holly Springs on file in the chancery clerk's office and at the city hall, then they are part of the public records which

should remain available for the use of the public, and it is not the duty of the clerk to make copies of the same. As hereinbefore stated they were introduced in evidence by the City of Holly Springs and were thereupon withdrawn with the privilege of substituting copies thereof, and neither the court reporter nor the clerk have been furnished with the copies thereof by the City, to be sent to this Court.

It would not be proper to issue a writ of certiorari to require an inferior tribunal or public officer to send up exhibits which were withdrawn by the litigant on whose behalf they were introduced, or to require an officer to make and send up copies of exhibits which the litigant has failed to supply pursuant to agreement with the trial court at the time the originals were allowed to be withdrawn. Nevertheless, it is but fair to the trial court and to both litigants that copies of these three maps should be supplied by the appellee to the chancery clerk to be forwarded to this Court for a full consideration of the merits of the case here on appeal, since the chancellor stated that he considered that "these maps are an important part of the evidence". Then, too, it may be difficult for this Court to properly evaluate the testimony in regard to these maps without the benefit of an inspection of the same.

Moreover, the motion of the appellee to strike the transcript of the record of the trial would indicate that the appellee is taking the position that we should not consider the testimony relating to the existence and location of the alley in question, because of the absence of the maps, or copies thereof, from the record, even though their absence from the record is due to the failure of the appellee to supply the copies thereof.

Both motions are overruled, and the appellee is required under Section 1958, Code of 1942, to deliver to the Chancery Clerk of Marshall County the copies of all original maps that were introduced and withdrawn

with the privilege on the part of the City to substitute copies thereof, all in order that the chancery clerk may send the same to this Court within ten days from this date.

Both motions overruled, but appellee ordered to file copies of withdrawn exhibits within ten days.

. All justices concur, except *Holmes, J.,* who took no part.

### ON MOTION TO REMAND TO DOCKET FOR ARGUMENT.

The above styled cause was submitted without argument on March 19, 1956. The appellants assignment of error and original brief were filed on February 21, 1956, and the brief of the appellee was filed on March 10, 1956, and the appellants' reply brief was filed on March 16, 1956. In the motion of the appellee for the remand of the case to the docket for argument, the point is made that no process was ever served on the appellee but that when the appellee received the original brief of the appellant, the attorneys for the appellee filed a brief on its behalf, arguing the cause in the state of the record then presented.

On May 7, 1956, we overruled the motion of the appellants for diminution of the record which sought to obtain the sending up of certain exhibits that had been introduced by the appellee with the privilege of withdrawing them and substituting copies therefor. We were not advised by the record that the original maps of the City of Holly Springs had not in fact been withdrawn from the possession of the clerk, and we naturally assumed that being the only maps of the city on file in the Chancery Clerk's Office and the Office of the City Clerk that they would be withdrawn pursuant to the understanding by which they were to be withdrawn upon substitution of copies thereof. Hence we did not then feel justified in ordering the clerk to send up these maps, there being

nothing to show that they were still in his possession. Moreover, original documents are ordinarily sent up to this Court on order of the trial courts.

After the appeal was taken, the appellants obtained a hearing before the chancellor on their motion to have the maps or copies thereof sent to this Court, and as pointed out in our opinion rendered on May 7, 1956, the chancellor held at the hearing of the motion before him that he had lost jurisdiction in the case and that he overruled the motion for that reason but expressed the opinion that the maps which had been introduced in evidence were an important part of the evidence, and stated in substance that he should like for this Court to have the benefit of the maps on this appeal. Nevertheless the appellee took no steps to have the maps or copies thereof made available to this Court.

In the opinion rendered by this Court on May 7, 1956, we also overruled a motion of the appellee to strike the transcript of the stenographic notes, the ground of the motion being that neither these exhibits nor copies thereof were contained in the record, but we thereupon allowed the appellee ten days within which to supply copies of the maps which had been introduced by the appellee with the privilege of withdrawing the same and substituting copies. The copies of the exhibits were accordingly sent to this Court by the Clerk of the Chancery Court.

On the motion of the appellant filed on May 10, 1956, to remand the case to the docket for argument, it is stated that as a result of the proceedings above referred to, the Court now has before it copies of the exhibits in question but "which were not before the Court when the appellee had an opportunity to file its brief." The motion further states that since the record has now been radically changed that the appellee should be given an opportunity to file a brief on the record as now presented, and to have the case remanded to the docket for argument.

 We do not think that the appellee is entitled to have this motion sustained. After having introduced the exhibits with the privilege of withdrawing the same and substituting copies thereof, counsel for the appellee stated into the record the following: ''I wonder if we might stipulate that in substituting copies we don't have to substitute the entire large map?'', to which counsel for the appellants made the following reply: ''Just the pertinent space, with the identifying data, etc. on it. Yes, sir, that's all right.'' We think that the foregoing quoted question and answer clearly show that the appellee assumed the responsibility of making the substitution that he obtained authority to make, and that counsel for the appellants had the right to assume that the substitution would be made.

Moreover, we now have the record before us that was made upon the trial before the chancellor, the only difference being that the chancellor had the original maps before him and we have before us what the appellee caused to be sent here by the clerk as being copies of the original exhibits.

It would not have been proper for the chancery clerk to have sent the original maps to this Court after they had been introduced with the privilege of withdrawing the same and substituting copies, unless the trial court had ordered the originals sent to this Court while he had jurisdiction of the cause. Nor do we think that a clerk of a trial court should be required to undertake to reproduce a map of a municipality, even if he possessed the skill to do so, but that when original documents are introduced with the privilege of withdrawing the same and substituting copies, such copies should be supplied by the litigant introducing the original exhibits.

The motion to remand the cause to the docket for argument would result in continuance of this cause until the September term of Court, since today is the last sitting

for the hearing of arguments during the present term. The motion is therefore overruled.

Motion to remand cause to the docket for argument overruled.

*Roberds, Hall, Lee* and *Gillespie, JJ.,* concur.